**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

RIDING FILMS, INC.,

     **Plaintiff,**

  **vs.**

                                    **Civil Action 2:13-cv-46
Judge Marbley
Magistrate Judge King**

JOHN DOES 129-193,

     **Defendants.**

<u>**OPINION AND ORDER**</u>

     This is a copyright action in which plaintiff alleges that defendants copied and distributed plaintiff's copyrighted work, the motion picture "Dawn Rider." *Complaint*, Doc. No. 1, ¶ 5. Defendants are otherwise identified only by IP addresses. *Exhibit B*, attached to *Complaint*. This matter is now before the Court on defendant Doe No. 163's *Motion to Quash Subpoena and Motion for Severance*, Doc. No. 5, and defendant Doe No. 189's *Motion to Quash Subpoena and Motion for Severance*, Doc. No. 6. For the reasons that follow, the motions are **DENIED.**

**I.    ALLEGATIONS, CLAIMS AND PROCEDURAL BACKGROUND**

     Plaintiff Riding Films, Inc., a limited liability company, is a developer, producer and/or distributor of motion pictures that has exclusive ownership rights over a motion picture entitled "Dawn Rider." *Complaint*, ¶¶ 3, 5, 8, 9. Plaintiff alleges that unknown defendant Does 129-193 (collectively, "Doe defendants" or "unknown

1

defendants") copied and distributed plaintiff's copyrighted work, Dawn Rider. *Id.* at ¶ 5.  According to plaintiff, Doe defendants used a peer-to-peer ("P2P") network known as "BitTorrent protocol" or "torrent." *Id.*  Plaintiff alleges that individuals, such as the unknown defendants, joined together as a "swarm" in order to use the BitTorrent protocol to illegally download copyrighted material:

> The BitTorrent protocol makes even small computers with low bandwidth capable of participating in large data transfers across a P2P network.  The initial file-provider intentionally elects to share a file with a torrent network.  This initial file is called a seed.  Other users ("peers") connect to the network and connect to the seed file to download.  As yet additional peers request the same file each additional user becomes a part of the network from where the file can be downloaded.  However, unlike a traditional peer-to-peer network, each new file downloader is receiving a different piece of the data from users who have already downloaded the file that together comprises the whole.  This piecemeal system with multiple pieces of data coming from peer members is usually referred to as a "swarm."  The effect of this technology makes every downloader also an uploader of the illegally transferred file(s).  This means that every "node" or peer user who has a copy of the infringing copyrighted material on a torrent network can also be a source of download, and thus distributor for that infringing file.

*Id.*

Plaintiff goes on to allege that the possibility of successfully downloading increases when more peers join the swarm:

> This distributed nature of BitTorrent leads to a rapid viral spreading of a file throughout peer users.  As more peers join the swarm, the likelihood of a successful download increases.  Because of the nature of a BitTorrent protocol, any seed peer that has downloaded a file prior to the time a subsequent peer downloads the same file can automatically be a source for the subsequent peer so long as that first seed peer's computer is online at the time the subsequent peer downloads a file.  Essentially, because of the nature of the swarm downloads as described above, every infringer is stealing copyrighted material from other potential infringers in numerous jurisdictions around the world, and each is also distributing infringing material.

*Id.* at ¶ 6.

According to plaintiff, Doe defendants' copyright infringements permit them and others to illegally obtain and distribute at no cost plaintiff's unauthorized copyrighted works. *Id.* at ¶ 8. Distributing even a portion of an unlawful copy of a copyrighted work, such as Dawn Rider, "can result in the nearly instantaneous worldwide distribution of that single copy to an unlimited number of people." *Id.*

On January 16, 2013, plaintiff filed the instant action, alleging that Doe defendants unauthorized copying, distribution and use of plaintiff's copyrighted work by the Doe defendants violated plaintiff's exclusive rights in Dawn Rider. *Id.* at ¶¶ 12-17. Plaintiff alleges that Doe defendants' willful, intentional, wanton and/or malicious and/or outrageous acts of copyright infringement (made with full knowledge of plaintiff's ownership copyrights of Dawn Rider) will cause plaintiff irreparable injury unless they are restrained and enjoined. *Id.* at ¶¶ 18-21. Plaintiff seeks statutory and punitive damages for each act of infringement of its copyright as well as costs and attorneys' fees. *Id.* at ¶ 22-25. Plaintiff also seeks injunctive relief prohibiting each Doe defendant from further infringing plaintiff's copyright and ordering each defendant to destroy all copies of the copyrighted Dawn Rider made in violation of plaintiff's copyrights. *Id.* at ¶ 26.

At the time the action was filed, plaintiff did not know the names of the Doe defendants. *Id.* at ¶ 10. Instead, plaintiff knew each defendant only by (1) the internet protocol ("IP") address assigned to that defendant by his or her internet service provider,

and (2) the date and time that the infringing activity of each
defendant was observed.  *Id*.  *See also id*. at ¶ 16 ("The Plaintiff has
identified each Defendant by the IP address assigned to that Defendant
by his or her ISP and the date and at the time at which the infringing
activity of each Defendant was observed.").  Plaintiff alleges that
each Doe defendant committed violations of the same law (17 U.S.C. §
101, *et seq*.) "within the same series of transactions or occurrences
(e.g. downloading and distribution of the same copyrighted Motion
Picture [Dawn Rider] owned by Plaintiff) and by using the same means
(BitTorrent network)."  *Id*. at ¶ 11.  Plaintiff also alleges that "all
of the infringements alleged in this lawsuit arise from the exact same
unique copy of Plaintiff's movie as evidenced by the cryptographic
hash value.  The Defendants are all part of the exact same 'swarm.'"[1]
*Id*.  According to plaintiff, the Doe defendants' illegal acts occurred
in the same series of transactions and the Doe Defendants conspired
together to copy and/or distribute Dawn Rider:

> Defendants' acts occurred in the same series of
> transactions because each Defendant downloaded and/or
> distributed, or offered to distribute the Motion Picture
> [Dawn Rider] to other infringers on the network, including
> the Doe Defendants and/or other network users, who in turn
> downloaded and/or distributed the Motion Picture.
> Therefore, the Defendants each conspired with other
> infringers on the BitTorrent network to copy and/or
> distribute the Motion Picture, either in the same
> transaction or occurrence or a series of transactions or
> occurrences.

*Id*.

On the same day that the *Complaint* was filed, plaintiff also

---

[1] "That value acts as a 'unique digital fingerprint' that ensures a piece of
data belongs in a particular torrent file." *Malibu Media, LLC v. Pelizzo*,
NO. 12-22768-CIV-SEITZ/SIMONTON, 2012 U.S. Dist. LEXIS 180980, at *4 (S.D.
Fla. Dec. 21, 2012) (citations omitted).

filed an *ex parte* motion seeking to conduct limited, expedited discovery of non-party internet service providers in order to determine the identities of defendants. Doc. No. 2. Specifically, plaintiff sought leave to serve a subpoena pursuant to Fed. R. Civ. P. 45 on certain ISPs in order to discover the name, address(es), telephone number(s), e-mail address(es) and MAC address of each Doe defendant that plaintiff has identified to date (as well as those plaintiff may identify in the future). *Id*. at 20-21. Plaintiff represents that it will use this information only for the purpose of pursuing its claims in this litigation. *Id*. at 21. This Court granted plaintiff's *ex parte* motion, concluding that plaintiff had established good cause because it could not meet its service obligation under Fed. R. Civ. P. 4 without the requested discovery. *Order*, Doc. No. 4, pp. 1-2.

On February 22, 2013, plaintiff issued a subpoena to WideOpenWest ("WOW"), seeking information attached to certain IP addresses ("the subpoenaed information"):

> In accordance with the attached court order, please provide all records and information sufficient to identify the people or entities whose Internet Protocol Address ("IP Address") are listed in Attachment A to this Subpoena including the following: personal and business names, any and all addresses, any and all telephone numbers, any and all e-mail addresses, and Media Access Control addresses ("MAC Addresses").

*Exhibit A*, attached to Doc. Nos. 5 and 6 ("the subpoena"). The subpoena identified a response date of March 12, 2013, which was later extended to April 5, 2013. *Id.; Exhibit D*, attached to Doc. Nos. 5 and 6.

On February 28, 2013, WOW notified the persons associated with

the identified IP addresses that WOW had received a subpoena seeking
disclosure of its customer information.  *Exhibit D*, attached to Doc.
Nos. 5 and 6.  WOW further advised these customers that it is legally
obligated to respond to the subpoena, but that the customers
associated with the targeted IP addresses could move to quash the
subpoena.  *Id*.

Thereafter, two of the Doe defendants, Nos. 163 and 189 ("the
moving defendants"), filed motions to quash and motions to sever the
claims against the various Doe defendants.  *See* Doc. Nos. 5 and 6.
Plaintiff opposes these motions, Doc. Nos. 7 and 8, and the moving
defendants have filed a reply, Doc. Nos. 9 and 10.[2]  These matters are
therefore now ripe for resolution.

## II.  REQUEST TO QUASH SUBPOENAS

### A.  Standard

The Federal Rules of Civil Procedure grant parties the right to
"obtain discovery regarding any nonprivileged matter that is relevant
to any party's claim or defense. . . ."  Fed. R. Civ. P. 26(b)(1).
Relevance for discovery purposes is extremely broad.  *Lewis v. ACB
Business Services, Inc.*, 135 F.3d 389, 402 (6th Cir. 1998).  However,
"district courts have discretion to limit the scope of discovery where
the information sought is overly broad or would prove unduly
burdensome to produce."  *Surles ex rel. Johnson v. Greyhound Lines*,

---

[2] The motions to quash and motions to sever, as well as the opposing memoranda
and reply memoranda, are identical except for reference to the specific
moving Doe defendant.  For ease of reference, the Court will refer only to
the first filed motion and related briefs, *i.e.*, *Motion to Quash and Motion
to Sever*, Doc. No. 5 ("*Motion*"); *Plaintiff's Memorandum in Opposition to
Defendant Doe No. 163's Anonymous Motion to Quash Subpoena and Motion for
Severance*, Doc. No. 7 ("*Memo. in Opp.*"); *Reply Memorandum in Support of
Motion to Quash Subpoena and Motion for Severance*, Doc. No. 9 ("*Reply*").

Inc., 474 F.3d 288, 305 (6th Cir. 2007) (citing Fed. R. Civ. P. 26(b)(2)). In determining the proper scope of discovery, a district court balances a party's "right to discovery with the need to prevent 'fishing expeditions.'" *Conti v. Am. Axle & Mfg.*, No. 08-1301, 326 Fed. Appx. 900, at *907 (6th Cir. May 22, 2009) (quoting *Bush v. Dictaphone Corp.*, 161 F.3d 363, 367 (6th Cir. 1998)).

Under Rule 45 of the Federal Rules of Civil Procedure, parties may command a nonparty to, *inter alia*, produce documents. Fed. R. Civ. P. 45(a)(1). Rule 45 further provides that "the issuing court must quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies; or subjects a person to undue burden." Fed. R. Civ. P. 45(c)(3)(A)(iii), (iv). Although irrelevance or overbreadth are not specifically listed under Rule 45 as a basis for quashing a subpoena, courts "have held that the scope of discovery under a subpoena is the same as the scope of discovery under Rule 26." *Hendricks v. Total Quality Logistics, LLC*, 275 F.R.D. 251, 253 (S.D. Ohio 2011) (internal quotation marks omitted). The movant bears the burden of persuading the court that a subpoena should be quashed. *See*, *e.g.*, *Baumgardner v. Lousiana Binding Serv.*, No. 1:11-cv-794, 2013 U.S. Dist. LEXIS 27494, at *4 (S.D. Ohio Feb. 28, 2013); *Williams v. Wellston City Sch. Dist.*, No. 2:09-cv-566, 2010 U.S. Dist. LEXIS 122796, at *21 (S.D. Ohio Nov. 2, 2010).

## B. Discussion

Although unclear at times, the motions appear to raise the following arguments in support of the requests to quash the subpoena:

7

(1) the moving defendants have standing to challenge the subpoena, which requires the disclosure of privileged and/or protected information and which imposes an undue burden, *Motion*, pp. 2, 4; *Reply*, pp. 3-5; (2) the action is an effort to extort or coerce settlements, *Motion*, p. 4; *Reply*, pp. 3, 8-10, 19; and (3) the subpoena is not supported by good cause, *Motion*, p. 10; *Reply*, pp. 6-8. The Court shall address each argument in turn.

### 1. Standing

The parties disagree whether the moving defendants, who are not the recipients of the subpoena, have standing to challenge the subpoena directed to WOW, a third party. "[A]bsent a claim of privilege, a party has no standing to challenge a subpoena to a nonparty." *Novovic v. Greyhound Lines, Inc*., 2:09-CV-00753, 2012 U.S. Dist. LEXIS 9203, at *23 (S.D. Ohio Jan. 26, 2012) (quoting *Donahoo v. Ohio Dep't of Youth Servs.*, 211 F.R.D. 303, 306 (N.D. Ohio 2002)) (internal quotation marks omitted). *See also Mann v. University of Cincinnati*, Nos. 95-3195 and 95-3292, 1997 U.S. App. LEXIS 12482, at *13 (6th Cir. May 27, 1997) (citing 9A Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure § 2459 (1995) (noting that "ordinarily a party has no standing to seek to quash a subpoena issued to someone who is not a party to the action unless the party claims some personal right or privilege with regard to the documents sought")); *Waite, Schneider, Bayless & Chesley Co. L.P.A. v. Davis*, No. 1:11-cv-0851, 2013 U.S. Dist. LEXIS 5253, at *14-15 (S.D. Ohio Jan. 14, 2013) ("The only basis upon which a party could have standing to quash a non-party subpoena would be a claim or personal right or

privilege.") (citing *Hackmann v. Auto Owners, Ins. Co.*, No. 2:05-cv-876, 2009 U.S. Dist. LEXIS 15128 (S.D. Ohio Feb. 6, 2009)) (internal citations omitted).  Personal rights or privileges supporting a claim to standing "have been recognized with respect to personal bank records, information in a personnel file, corporate bank records, or Indian tribal records." *Waite, Schneider, Bayless & Chesley Co. L.P.A.*, 2013 U.S. Dist. LEXIS 5253, at *15.

Here, the Court understands that the moving defendants raise three arguments to support their claim to standing, which the Court shall address in turn.

### a. Personal right and proprietary interest in confidential information

The moving defendants first argue that they have "standing to move to quash the subpoena because it seeks disclosure of identification information considered to be confidential and over which [the moving defendants have] personal and proprietary interests." *Motion*, p. 2 (citing, *inter alia*, Fed. R. Civ. P. 45(c)(3)(A)).  *See also Reply*, pp. 3-4 (citing cases for the proposition that a claim to personal right or privilege in the subpoenaed documents gives rise to a party's standing to quash a non-party subpoena and asserting that "Defendant has satisfied its burden.").  The moving defendants therefore apparently believe that the subpoenaed information (name, address, telephone number, e-mail address and MAC address associated with each IP address) is confidential and/or is information over which they have a personal or proprietary interest because they have an expectation of privacy in this information.  *See Reply*, pp. 4-5 (citing *Third Degree Films, Inc.*

*v. Does 1-108*, No. 11-3007, 2012 WL 716221, at *2 (D. Md. Feb. 28, 2012) (concluding that a Doe defendant has standing to challenge a subpoena because, *inter alia*, the Doe defendant has a privacy interest, however minimal, in the contact information associated with the IP address)). The moving defendants further contend that "this Court cannot conclude with any reasonable certainty that plaintiffs have overcome the expectation of privacy by putative defendants." *Id.* at 5 [sic].

Plaintiff disagrees, arguing that the moving defendants have no privacy right in the subpoenaed information and that plaintiff's right to judicial process to protect its copyright outweighs any right to privacy or to remain anonymous under the First Amendment to the United States Constitution. *Memo. in Opp.*, pp. 4-5. Plaintiff further contends that the moving defendants had no reasonable expectation of privacy in the subpoenaed information because they voluntarily provided the information to a third-party ISP. *Id.* at 5.

Plaintiff's arguments are well-taken. As an initial matter, the moving defendants have not explained how the subpoenaed information is similar to the type of information that this Court has previously recognized as giving rise to standing. *See Waite, Schneider, Bayless & Chesley Co. L.P.A.*, 2013 U.S. Dist. LEXIS 5253, at *15 (finding personal rights or privileges attach to "personal bank records, information in a personnel file, corporate bank records, or Indian tribal records"). Moreover, the moving defendants have not described how, and the Court is not persuaded that, the subpoenaed records, if disclosed, would harm the moving defendants or otherwise invade their

10

privacy.  Indeed, another district court within this circuit recently rejected similar motions to quash a subpoena seeking the same information as does the instant subpoena.  *See*, *e.g.*, *Breaking Glass Pictures v. Doe*, No. 3:13-CV-75, 2013 U.S. Dist. LEXIS 83225, at *4-6 (E.D. Tenn. June 13, 2013); *Sojo Prods., Inc. v. Does 1-67*, Nos. 3:12-cv-599, 3:12-cv-600; 3:12-cv-601, 3:12-cv-602, 3:12-cv-603, 2013 U.S. Dist. LEXIS 58602, at *4-7 (E.D. Tenn. Apr. 24, 2013); *Safety Point Prods. v. Does 1-57*, No. 3:12-cv-601, 2013 U.S. Dist. LEXIS 49521, at *3-5 (E.D. Tenn. Apr. 5, 2013).  In permitting expedited discovery so as to enable plaintiffs in those cases to identify the unknown defendants, the District Court for the Eastern District of Tennessee noted that the defendants had not identified any privilege (such as attorney-client or doctor-patient privilege) "that protects a person's name, address or phone from disclosure." *Breaking Glass Pictures*, 2013 U.S. Dist. LEXIS 83225, at *5.  *See also Sojo Prods., Inc.*, 2013 U.S. Dist. LEXIS 58602, at *5-6 (same).  *Cf. Safety Point Prods.*, 2013 U.S. Dist. LEXIS 49521, at *3-4.  That court concluded that the unidentified defendants had no reasonable expectation of privacy in the subpoenaed information because the defendants had already shared that information with the ISP in order to obtain internet service. *Safety Point Prods.*, 2013 U.S. Dist. LEXIS 49521, at *4-5; *Sojo Prods., Inc.*, 2013 U.S. Dist. LEXIS 58602, at *5-6 (same).  *Cf. Breaking Glass Pictures*, 2013 U.S. Dist. LEXIS 83225, at *5 (concluding that requested information is neither privileged nor protected because defendants already shared the information with the

ISP).  The Court finds this reasoning persuasive.[3]

For all of these reasons, the Court concludes that the moving defendants have failed to establish that they have standing to quash the subpoena based on a personal or proprietary interest in the subpoenaed information.

### b.  Undue burden

The moving defendants also argue that they have "standing to move to quash the subpoena because it imposes an undue burden under Fed. R. Civ. P. 45(c)(3)(A)(iv)." *Motion*, p. 2.[4]  *See also id.* at 3-4 ("If this Court should force Wide Open West to turn over the requested information, the risk [the moving defendants] would suffer reputational injury even if Plaintiffs [sic] allegations are later disproven are too great and present an undue burden to [the moving defendants] under Fed. R. Civ. P. 45(c)(3)(a)(iv) [sic].").  Plaintiff, however, contends that the moving defendants, who are not the responding parties to the subpoena, lack standing to assert that production of the subpoenaed information imposes an undue burden.  *Memo. in Opp.*, pp. 5-6.

The moving defendants' suggestion that they personally will face an undue burden if WOW produces the subpoenaed information is unavailing.  Rule 45 requires that the party issuing the subpoena

---

[3] To the extent that they may have asserted such an argument, *see Reply*, p. 6, the moving defendants similarly fail to explain how production of the subpoenaed information infringes on any First Amendment right.  Moreover, it is well-established that the First Amendment does not protect copyright infringement.  *See*, *e.g.*, *Breaking Glass Pictures*, 2013 U.S. Dist. LEXIS 83225, at *6 (citing *First Time Videos v. Does 1-500*, 276 F.R.D. 241 (N.D. Ill. 2011)); *Sojo Prods., Inc.*, 2013 U.S. Dist. LEXIS 58602, at *6-7 (same).

[4] As discussed *supra*, this subdivision provides, in pertinent part, that "the issuing court must quash or modify a subpoena that . . . subjects a person to undue burden."  Fed. R. Civ. P. 45(c)(3)(A)(iv).

"take steps to avoid imposing undue burden or expense *on a person subject to the subpoena*." Fed. R. Civ. P. 45(c)(1) (emphasis added). *Cf. Info-Hold, Inc. v. Sound Merch., Inc.*, 538 F.3d 448, 457 (6th Cir. 2008) ("'[D]istrict courts have discretion to limit the scope of discovery where the information sought is overly broad or *would prove unduly burdensome to produce*.'") (quoting *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007)) (emphasis added).  Accordingly, this Court and another district court in this circuit have previously concluded that only the entity responding to the subpoena has standing to challenge the subpoena on the basis of undue burden.  *See Levitin v. Nationwide Mut. Ins. Co.*, 2:12-cv-34, 2012 U.S. Dist. LEXIS 177738, at *14-15 (S.D. Ohio Dec. 14, 2012) ("Here, the subpoenas are directed to Plaintiff's prior employers. Thus, only Plaintiff's prior employers have standing to challenge the subpoenas on the ground that production of the subpoenaed documents would pose an undue burden expense."); *McNaughton-McKay, Elec. Co. v. Linamar Corp.*, No. 09-cv-11165, 2010 U.S. Dist. LEXIS 59275, at *9-10 (E.D. Mich. June 15, 2010) ("Defendant [which was not the recipient of the subpoena] does not have standing to argue that Chrysler's compliance with the subpoena will cause undue burden where Chrysler has not objected to the subpoena on this ground.").  *Cf. Donahoo v. Ohio Dep't of Youth Servs.*, 211 F.R.D. 303, 306 (N.D. Ohio Mar. 1, 2002) ("The party to whom the subpoena is directed is the only party with standing to oppose it.").

Here, the moving defendants are not required to respond to the subpoena; it is WOW which is the responding party.  WOW has not moved

13

to quash the subpoena, nor has it even suggested that responding to the subpoena will impose an undue burden on it.  Moreover, plaintiff's representation that WOW has already produced subpoenaed information regarding other Doe defendants is uncontroverted.  *See Memo. in Opp.*, p. 6 ("In fact Wide Open West has not only represented that it will respond to the subpoenas after giving its customers thirty days' notice, it has actually responded by providing the information for other John Doe Defendants as of 4/15/13.").  Under these circumstances, the moving defendants have not established that they have standing because the subpoena imposes an undue burden on them.

### c.    **"Affected by" the subpoena**

Finally, the moving defendants' conclusory reference to Fed. R. Civ. P. 45(c)(3)(B) does not confer standing on the moving defendants. *Motion*, p. 2 (citing, without elaborating, that this subsection "allows a person affected by, but not subject to, a subpoena to move to quash to [sic] subpoena").  To the extent that the moving defendants' reliance on this provision suggests that they are "affected by" the subpoena because they have a personal or proprietary interest or because the subpoena imposes an undue burden, those arguments fail for the reasons discussed *supra*.  Similarly, to the extent that the conclusory reference is based on alleged reputational harm, *see id*., that assertion is without merit for the reasons discussed *infra*.  Accordingly, the Court cannot conclude that the moving defendants have standing to object to the subpoena or that the subpoena imposes an undue burden on the moving defendants.

2.    **Risk of extortion**

Even if the moving defendants had standing to challenge the subpoena, their arguments contesting production of the subpoenaed information would nevertheless be unpersuasive.  For example, the moving defendants contend that a subscriber is not necessarily responsible for illegal downloads simply because that activity is associated with a subscriber's address:  Multiple individuals may use a single IP address and any one of those users, other than the subscriber, may have improperly downloaded protected information. *Reply*, pp. 1-3.  The moving defendants therefore argue that some courts (but not within this circuit) have recognized that "[t]his type of fishing expedition [obtaining identity and contact information of subscribers] leads to an extortion risk[.]" *Motion*, p. 4 (citing *VPR Internationale v. Does 1-1017*, No. 11-2068, 2011 U.S. Dist. LEXIS 64656, at *4 (C.D. Ill. Apr. 29, 2011)).  More specifically, the moving defendants suggest that the prospect of public embarrassment arising from disclosure of their identities pressures innocent Doe defendants into settlements. *See Reply*, pp. 3 ("This risk of false positives gives rise to the potential for coercing unjust settlements from innocent defendants such as individuals who want to avoid the embarrassment of having their names publicly associated with allegations of illegally downloading.") (citing *Digital Sin, Inc. v. Does 1-176*, 279 F.R.D. 239, 242 (S.D. N.Y. 2012)), 8-10, 19 ("Plaintiff may be merely seeking this contact information in order to bother a list of IP address holders who are not reliably going to be found infringers, with unfounded allegations and demands for

payment.").

However, other than these generalized fears, the moving defendants have offered no evidence (or even allegations) that the plaintiff in this action has engaged in abusive litigation tactics. Under these circumstances, the Court is not persuaded that imputing such guilt to plaintiff and precluding the pursuit of this action is appropriate. *See*, *e.g.*, *Malibu Media, LLC v. Doe*, 285 F.R.D. 273, 278 (S.D. N.Y. 2012) ("[N]one of the instances of improper litigation tactics that have been brought to our attention involve plaintiff or plaintiff's counsel. We are reluctant to prevent plaintiff from proceeding with its case based only on a 'guilt-by-association' rationale."). The Court also notes that, unlike the allegations of illegal downloads in other actions addressing coercive settlements, *cf. id*, this litigation does not involve the alleged downloading of pornography. Moreover, even if this case did present a risk of public embarrassment, the Doe defendants may take measures to protect themselves. *See*, *e.g.*, *Malibu Media, LLC v. Doe*, 902 F. Supp. 2d 690 (E.D. Penn. 2012) (granting motions to proceed anonymously). Additionally, should the Doe defendants later establish that plaintiff's claims have been vexatiously pursued or frivolous, or if the Doe defendants prevail in this action, they may seek sanctions and/or reimbursement for their costs and fees. *See* Fed. R. Civ. P. 11; 28 U.S.C. § 1927; 17 U.S.C. § 505; Fed. R. Civ. P. 54. For all these reasons, the moving defendants' motions to quash the subpoena based on a generalized fear of extortion is not well-taken.

### 3. **Good cause**

The moving defendants also argue that the Court should quash the subpoena because it is not supported by good cause. *Motion*, p. 10 ("Good cause exists to quash the subpoena served on Wide Open West to compel the disclosure of the name, address, telephone number and e-mail address of [the moving defendants]."); *Reply*, pp. 6-8 (arguing that determining whether good cause exists to permit expedited discovery requires a showing of good cause and citing to cases outside this circuit for factors that the court must weigh), 19 ("Good cause exists to quash the subpoena[.]"). For example, the moving defendants contend that the subpoenaed information does not establish that the subscribers are the actual infringers. *Reply*, pp. 6-8.

The moving defendants' arguments are not well-taken. As noted *supra*, this Court previously concluded that plaintiff's request for expedited discovery was supported by good cause. *Order*, Doc. No. 4 (citing *Arista Records, LLC v. Does 1-15*, 2007 WL 5254326, *2) (S.D. Ohio May 17, 2007)). *See also Breaking Glass Pictures v. Does*, No. 2:13-cv-389, 2013 U.S. Dist. LEXIS 88090 (S.D. Ohio June 24, 2013) (finding good cause and permitting expedited discovery in copyright infringement case in order to obtain the identity of each Doe defendant). To the extent that the moving defendants apparently ask the Court to revisit this conclusion, they have offered nothing to establish that the prior decision was erroneous. For example, the moving defendants argue at length that the mere identification of the subscriber does not necessarily establish that the subscriber was the person who illegally downloaded the copyrighted work. *Reply*, pp. 6-8.

17

However, nothing in Rule 45 permits a court to quash a subpoena based on "a general denial of liability." *See*, *e.g.*, *First Time Videos, LLC v. Doe*, 276 F.R.D. 241, 250 (N.D. Ill. 2011). *See also* Fed. R. Civ. P. 45. Instead, arguments related to the merits of the allegations are appropriately addressed in the context of a motion to dismiss or a motion for summary judgment rather than on a motion to quash. *See*, *e.g.*, *First Time Videos, LLC*, 276 F.R.D. at 250.

The moving defendants' arguments related to privacy and abusive litigation tactics, *Reply*, pp. 8-9, are likewise unavailing for the reasons discussed *supra*. Similarly, arguments that the subpoenaed information is irrelevant because that information "cannot give you the identity of the infringer[,]" *Motion*, p. 9, are not well-taken. As this Court previously concluded, plaintiff cannot meet its service obligation under Fed. R. Civ. P. 4 without the requested discovery. *Order*, Doc. No. 4, pp. 1-2. Moreover, Rule 26 authorizes broad discovery, including discovery that "appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Therefore, even if discovery later reveals that it was someone other than the subscriber who violated plaintiff's copyright, the subpoenaed information (the subscriber's contact information) is likely to lead to the discovery of admissible information, *i.e.*, the identity of the actual infringer. In short, the moving defendants' request to quash the subpoena is without merit.

## III.  REQUESTS TO SEVER THE DOE DEFENDANTS

The moving defendants also ask the Court to sever the Doe defendants, contending that joinder is improper under Fed. R. Civ. P.

20. *Motion*, pp. 4-9; *Reply*, pp. 10-16.  Rule 20 permits persons to be joined as defendants in one action if (1) "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences[,]" and (2) the claims against the various defendants share a common question of law or fact.  Fed. R. Civ. P. 20(a)(2).  "Under the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged."  *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966).  *See also Brown v. Worthington Steel*, 211 F.R.D. 320, 324 (S.D. Ohio 2002) ("Courts liberally permit joinder under Rule 20(a).") (citing *United Mine Workers of Am.*, 383 U.S. at 724).  To that end, courts in this circuit give the terms "transaction" and "occurrence" a broad and liberal interpretation.  *Lasa Per L'Industria Del Marmo Societa Per Azioni v. Alexander*, 414 F.2d 143, 147 (6th Cir. 1969).  "The purpose of Rule 20(a) is to promote judicial economy and trial convenience."  *Evans v. Midland Funding LLC*, 574 F. Supp. 2d 808, 811 (S.D. Ohio 2008) (quoting *Lee v. Dell Products, L.P.*, No. 3:06cv0001, 2006 U.S. Dist. LEXIS 75573, 2006 WL 2981301, *7 (M.D. Tenn. Oct. 16, 2006) (internal quotation marks omitted)).

"However, even if the requirements of Rule 20 are met, a district court nevertheless retains considerable discretion to sever defendants if it finds that the objectives of the rule are not fostered, or that joinder would result in prejudice, expense, or delay."  *Voltage Pictures, LLC v. Does 1-43*, No. 1:13CV465, 2013 U.S. Dist. LEXIS

63764, at *5 (N.D. Ohio May 3, 2013). The Court shall address each of the requirements under Rule 20(a)(2) in turn.

### A. Same Transaction or Series of Transactions

The moving defendants specifically argue that the mere allegations that the Doe defendants acted as a "swarm" or participated in BitTorrent technology is insufficient to establish that they engaged in a single transaction or in a series of closely related transactions under Rule 20. *Motion*, pp. 4-8; *Reply*, pp. 10-17. Both parties acknowledge, *see Memo. in Opp.*, p. 7; *Reply*, p. 10, and this Court agrees, that federal courts within this circuit and across the country[5] are divided on whether or not membership in the same swarm satisfies the joinder requirements under Rule 20. *See*, *e.g.*, *Voltage Pictures, LLC*, 2013 U.S. Dist. LEXIS 63764, at *5-6 (collecting cases); *Patrick Collins, Inc.*, 2013 U.S. Dist. LEXIS 50674, at *12-14 (same); *Third Degree Films, Inc. v. Doe*, No. 12-cv-14106, 2013 U.S. Dist. LEXIS 44131, at *17 (E.D. Mich. Mar. 18, 2013) ("In short, the heart of this disagreement is whether the mere alleged participation of a group of defendants in the same 'swarm' is, in itself, sufficient to satisfy Rule 20(a)(2)'s 'same transaction, occurrence, or series of transactions or occurrences' requirement, or if it instead simply

---

[5] Even district courts within the same district in this circuit are split. *See*, *e.g.*, *Voltage Pictures, LLC*, 2013 U.S. Dist. LEXIS 63764, at *11-12 (permitting joinder); *Night of the Templar, LLC v. Doe*, No. 1:13-CV-396, 2013 U.S. Dist. LEXIS 51625, at *11 (N.D. Ohio Apr. 10, 2013) (severing claims after finding that "participation in a specific swarm is too imprecise a factor absent additional information relating to the alleged copyright infringement to support joinder under Rule 20(a)"); *Patrick Collins, Inc. v. John Does 1-33*, No. 4:12-cv-13309, 2013 U.S. Dist. LEXIS 50674 (E.D. Mich. Feb. 27, 2013) (denying request to sever claims); *Patrick Collins, Inc. v. Doe*, No. 11-cv-15231, 2012 U.S. Dist. LEXIS 40536, at *9-13 (E.D. Mich. Mar. 26, 2012) (finding that alleged participation in a swarm did not support joinder under Rule 20).

shows that the defendants 'committed the same type of violation in the same way.'") (quoting *Next Phase Distrib., Inc. v. John Does 1-27*, 284 F.R.D. 165, 168-69 (S.D.N.Y. 2012)).

Some courts severing claims in swarm cases have concluded that simply participating in a swarm does not necessarily establish that defendants participated in the same transaction or occurrence. *See*, *e.g.*, *Night of the Templar, LLC*, 2013 U.S. Dist. LEXIS 51625, at *9-10 ("'Merely alleging that the Doe defendants all used the same file-sharing protocol, BitTorrent, to conduct copyright infringement of Plaintiff's film without any indication that they acted in concert fails to satisfy the arising out of the . . . same series of transactions or occurrences requirement.'") (quoting *Hard Drive Prod., Inc. v. Does 1-188*, 809 F. Supp. 2d 1150, 1151 (N.D. Cal. 2011)); *Patrick Collins, Inc. v. Doe*, No. 11-cv-15231, 2012 U.S. Dist. LEXIS 40536, at *9-13 (E.D. Mich. Mar. 26, 2012) ("[T]he the court concludes that simply alleging the use of BitTorrent technology, like earlier P2P file sharing protocols, does not comport with the requirements under Rule 20(a) for permissive joinder."). For example, unknown defendants may access the swarm at different times. *Night of the Templar, LLC*, 2013 U.S. Dist. LEXIS 51625, at *10 ("Plaintiff's IP address exhibits indicate that Defendants accessed the swarm at different times, on different days, using different BitTorrent clients. This suggests that Defendants were not wrapped up in a single factual occurrence.") (internal citations omitted); *Patrick Collins, Inc.*, 2012 U.S. Dist. LEXIS 40536, at *10 ("Each of the IP addresses connected to the investigative server at different times and

dates to download a piece of the Work and there is no allegation that any of the computers associated with the IP addresses downloaded or uploaded pieces of the Work with each other."). Accessing a swarm at different times suggests that computer users were not acting simultaneously or in concert, which persuades some courts that the actions of those users were not part of the same transaction or series of transactions. *See*, *e.g.*, *Patrick Collins, Inc.*, 2012 U.S. Dist. LEXIS 40536, at *12 ("The absence of information concerning the number of total users in the swarm, coupled with the BitTorrent protocol's ability to quickly share files further demonstrates that it is implausible that any of the Doe defendants were *simultaneously* sharing pieces of plaintiff's Work") (emphasis added); *Patrick Collins, Inc. v. Doe*, No. 12-12596, 2012 U.S. Dist. LEXIS 187556, at *3-4 (E.D. Mich. Aug. 28, 2012) ("This, combined with the fact that 'its users share files in relatively quick time frame, ranging anywhere from fifteen minutes to a few hours,' means that it is seemingly implausible that any of the Doe defendants *simultaneously* shared pieces of the Work with each other, and thus acted '*in concert*' sufficient to grant permissive joinder under Rule 20(a).") (emphasis added).

Conversely, some courts have concluded that joinder under Rule 20 does not necessarily require simultaneous or concerted action. *See*, *e.g.*, *Patrick Collins Inc. v. John Does 1-28*, No. 12-13670, 2013 U.S. Dist. LEXIS 11349, at *21 (E.D. Mich. Jan. 29, 2013) ("Joinder under the federal rules, however, does not require simultaneity — 'concerted action is not required for joinder.'") (quoting *Patrick Collins, Inc.*

*v. Doe*, 282 F.R.D. 161, 168 (E.D. Mich. 2012)); *Nucorp, Inc. v. Does 1-24*, No. 2:11-CV-15222, 2012 U.S. Dist. LEXIS 187547, at *14 (E.D. Mich. Oct. 18, 2012) ("[C]oncerted action is *not* a requirement for joinder under Rule 20(a)(2).") (emphasis in original); *Patrick Collins, Inc.*, 282 F.R.D. at 167 ("But, a concert of action is not required since Plaintiff alleges a right to relief severally against Defendants."). Instead, "[o]ther courts have permitted joinder, based on the theory that the claims are 'logically related,' and that the collaborative activity of the members of the swarm demonstrates that they engaged in the same transaction or series of transactions." *Voltage Pictures, LLC*, 2013 U.S. Dist. LEXIS 63764, at *6 (collecting cases). *See also Patrick Collins Inc. v. John Does 1-28*, No. 12-13670, 2013 U.S. Dist. LEXIS 11349, at *14-15 (E.D. Mich. Jan. 29, 2013) ("The 'logical relationship' test, in turn, 'is satisfied if there is substantial evidentiary overlap in the facts giving rise to the cause of action against each defendant. In other words, the defendants' allegedly infringing acts, which give rise to the individual claims of infringement, must share an aggregate of operative facts.'") (quoting *In re EMC Corp.*, 677 F.3d 1351, 1358 (Fed. Cir. 2012)). In addition, at least one district court in this circuit has concluded that allegations that defendants, *inter alia*, used the same digital file satisfied Rule 20(a)(2)'s "same transaction, occurrence, or series of transactions or occurrences" requirement. *Third Degree Films v. Does 1-36*, No. 11-CV-15200, 2012 U.S. Dist. LEXIS 87891, at *28-32 (E.D. Mich. May 29, 2012). *See also Patrick Collins, Inc. v. John Does 1-33*, No. 4:12-cv-13309, 2013 U.S.

23

Dist. LEXIS 50674 (E.D. Mich. Feb. 27, 2013) (recommending, *inter alia*, that motions to sever be denied without prejudice where defendants shared the same digital file in the same swarm). *Cf. Voltage Pictures, LLC*, 2013 U.S. Dist. LEXIS 63764, at *8-11 (finding that allegations that unknown defendants participating in the same swarm downloading the same motion picture was sufficient to support permissive joinder at the preliminary stage).

In *Third Degree Films*, the district court noted that, by virtue of uploading in a swarm, the unknown defendants helped pass on pieces of the copyrighted work:

> [E]ach defendant allegedly participated in the same swarm for the same digital encoding of the Work and thereby jointly contributed to the illegal distribution of the Work to others. By undoubtedly uploading to other peers in the swarm, which enabled those peers to upload to still other peers, all 36 Doe Defendants jointly contributed to either growing the swarm or maintaining its existence.

*Id*. at *27-28. *See also Voltage Pictures, LLC*, 2013 U.S. Dist. LEXIS 63764, at *11 n.2 ("[E]ach [defendant] participated in the BitTorrent swarm as an uploader (distributor) and downloader (copier) of the illegally transferred file."); *Patrick Collins Inc.*, 2013 U.S. Dist. LEXIS 11349, at *18-19 ("'[I]t is difficult to see how the sharing and downloading activity alleged in the Complaint — a series of individuals connecting either directly with each other or as part of a chain or 'swarm' of connectivity designed to illegally copy and share the exact same copyrighted file — could *not* constitute a 'series of transactions or occurrences' for purposes of Rule 20(a).'") (quoting *Digital Sin, Inc. v. Does 1-176*, 279 F.R.D. 239, 244 (S.D.N.Y.2012)) (emphasis in original). Although the court in *Third Degree Films*

acknowledged that future discovery might reveal that the plaintiff had failed to satisfy the requirements for joinder under Rule 20(a)(2) or that severance is appropriate, that court nevertheless concluded that joinder was proper at the initial stages of the litigation. *Third Degree Films*, 2012 U.S. Dist. LEXIS 87891, at *29-33.

Here, the *Complaint* alleges that the Doe defendants used the BitTorrent protocol to join together in a "swarm" in order to illegally download copyrighted material. *Complaint*, ¶ 5. More specifically, the *Complaint* alleges that the unidentified defendants all violated the same law (17 U.S.C. § 101 *et seq.*) in the same series of transactions (downloading and distributing the same file, Dawn Rider) by using the same means (the BitTorrent protocol). *Id.* at ¶ 11. According to plaintiff, "[t]he infringed work was included in one file related to the torrent file; in other words, all of the infringements alleged in this lawsuit arise from the exact same unique copy of Plaintiff's movie as evidenced by the cryptographic hash value." *Id.* The unknown defendants' alleged wrongful acts occurred in the same series of transactions or occurrences because each defendant downloaded and/or distributed, or offered to distribute Dawn Rider to other infringers on the network who in turn downloaded and/or distributed this movie. *Id.* Plaintiff therefore believes that the unidentified defendants "each conspired with other infringers on the BitTorrent network to copy and/or distribute the Motion Picture, either in the same transaction or occurrence or in a series of transactions or occurrences." *Id.*

Construing the terms "transaction" and "occurrence" broadly, *see*

*Lasa Per L'Industria Del Marmo Societa Per Azioni v. Alexander*, 414
F.2d at 147, and keeping in mind that joinder is strongly encouraged,
*see United Mine Workers of Am. v. Gibbs*, 383 U.S. at 724, this Court
concludes that plaintiff has alleged facts sufficient to satisfy the
"same transaction, occurrence, or series of transactions or
occurrences" requirement at this preliminary stage of proceedings.
*See*, *e.g.*, *Third Degree Films*, 2012 U.S. Dist. LEXIS 87891, at *29-33;
*Patrick Collins, Inc. v. Doe*, 286 F.R.D. 319, 321-22 (E.D. Mich.
2012).

    **B.**   **Common Question of Law or Fact**

    Rule 20 also requires that a plaintiff establish that claims
against all defendants share a common question of fact or law.  Fed.
R. Civ. P. 20(a)(2)(B).  Here, as discussed *supra*, plaintiff has
alleged that the Doe defendants (1) violated the same law (17 U.S.C. §
101 *et seq.*); (2) infringed plaintiff's rights in Dawn Rider by using
the same digital file; and (3) used the same BitTorrent protocol.  The
Court concludes that these allegations, at this preliminary stage,
satisfy Rule 20(a)(2)(B).  *See*, *e.g.*, *Third Degree Films*, 2012 U.S.
Dist. LEXIS 87891, at *13-14 (finding that the plaintiff had
adequately pled facts satisfying Rule 20(a)(2)(B) where plaintiff
alleged the same causes of action involving the same digital file and
the same investigation led to discovery of defendants' IP addresses);
*Patrick Collins, Inc. v. John Does 1-33*, No. 4:12-cv-13309, 2013 U.S.
Dist. LEXIS 50674, at *11 (same); *Patrick Collins, Inc. v. Doe*, 286
F.R.D. at 322.

### C.    Other Considerations

In addition to arguing that plaintiff has failed to satisfy the requirements for joinder under Rule 20(a)(2), the moving defendants apparently also ask this Court to sever the claims against the defendants because of, *inter alia*, the "tremendous risk of creating unfairness and denying individual justice to those sued" as well as the risk of extortion. *See*, *e.g.*, *Motion*, p. 5; *Reply*, pp. 15, 17. In reaching its decision to deny the moving defendants' request to sever, this Court is aware of these concerns, which have been echoed in the decisions of other courts. *Cf. Night of the Templar, LLC v. Doe*, No. 1:13-CV-396, 2013 U.S. Dist. LEXIS 51625, at *5 ("Rather, plaintiffs often seek to take advantage of the resources of federal courts to force small, individual settlements."); *Third Degree Films, Inc. v. Doe*, No. 12-cv-14106, 2013 U.S. Dist. LEXIS 44131, at *36-44 (noting the risk of forced settlements and a plaintiff's desire to join defendants in order to avoid paying multiple filing fees). However, as discussed *supra*, the law affords remedies should defendants establish that plaintiff has engaged in abusive litigation tactics or that plaintiff's claims are frivolous. *See* Fed. R. Civ. P. 11; 28 U.S.C. § 1927; 17 U.S.C. § 505; Fed. R. Civ. P. 54. *See also Patrick Collins, Inc. v. John Does 1-33,* No. 4:12-cv-13309, 2013 U.S. Dist. LEXIS 50674, at *25-27 (declining to exercise discretionary severance on the basis of general fears of forced settlement in the absence of case-specific allegations of coercion).  In light of these safeguards, the Court is not persuaded that its discretion is best exercised in severing the claims at this stage of the proceedings.

*Cf. Sojo Prod. Inc. v. Does 1-67*, Nos. 3:12-CV-599, 3:12-CV-600, 3:12-CV-601, 3:12-CV-602, 3:12-CV-603, 2013 U.S. Dist. LEXIS 58602, at *8 (E.D. Tenn. Apr. 24, 2013) (denying without prejudice request as "premature.  The Court does not have information sufficient to gauge the appropriateness of the joinder of the Defendants at this time, and severing these claims at this early stage of litigation is likely to cause delays and hinder disposition of these matters").

**WHEREUPON**, defendant Doe No. 163's *Motion to Quash Subpoena and Motion for Severance*, Doc. No. 5 ("*Doe No. 163's Motion*") and defendant Doe No. 189's *Motion to Quash Subpoena and Motion for Severance*, Doc. No. 6, are **DENIED**.


July 1, 2013                              *s/Norah McCann King*
                                     Norah M^c Cann King
                             United States Magistrate Judge